# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| AVELINO TAPIA,<br><br>        Plaintiff,<br><br>        v.<br><br>ANDREW M. SAUL, Commissioner of the<br>Social Security Administration,<br><br>        Defendant. | CAUSE NO.: 2:19-CV-264-TLS |

## OPINION AND ORDER

The Plaintiff Avelino Tapia seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits. For the reasons set forth below, reversal and remand for further proceedings is required.

## PROCEDURAL BACKGROUND

On October 1, 2015, the Plaintiff filed an application for disability insurance benefits, alleging disability beginning on May 28, 2015, due to spinal disc herniation. AR 65, 154, ECF No. 9. The claim was denied initially and on reconsideration. *Id*. at 80, 90. A hearing was held before the ALJ on March 16, 2018. *Id*. at 26. On August 8, 2018, the ALJ issued a written decision and found the Plaintiff not disabled. *Id.* at 26–33. On July 23, 2019, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief [ECF No. 13], the Commissioner filed a response brief [ECF No. 14], and the Plaintiff filed a reply brief [ECF No. 17].

## THE ALJ'S DECISION

For purposes of disability insurance benefits, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 28, 2015. AR 28. At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of obesity and degenerative disc disease of the lumbar spine. AR 28. Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). The ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listing 1.04 and Social Security Ruling 02-1p. AR 29.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant cannot climb ladders, ropes, scaffolds. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. He can read and write simple English.

AR 29–30.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff was unable to perform any past relevant work. AR 32. At step five, the ALJ considers whether the claimant can "make an adjustment to other work" in the national economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that there are other jobs in the national economy that the Plaintiff is also able to perform of cleaner housekeeping, folding machine operator, and bagger. AR 33. As a result, the ALJ found that the Plaintiff was not under a disability from May 28, 2015, through the date of the decision. *Id.*

The Plaintiff sought review of the ALJ's decision by the Appeals Council, which denied review. AR 1. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)

(internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In seeking reversal and remand of the ALJ's decision, the Plaintiff argues that the ALJ failed to build an accurate and logical bridge from the evidence to the RFC assessment and erred in evaluating the Plaintiff's subjective symptoms. The Court finds that remand is required for the ALJ to properly support the RFC for light work with postural limitations, specifically with regard to the ability to stand or walk for six hours in an eight-hour workday.

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*,

55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

Light work is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." *Id*. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Sedentary work requires walking and standing "occasionally," which is defined as "very little up to one-third of the time" or "no more than about 2 hours of an 8-hour workday." *Id.* at *5.

Here, the Plaintiff has the severe impairments of obesity and degenerative disc disease of the lumbar spine. At the hearing, he testified that, at his last job as a shipping manager where he worked for 19 years, he spent two hours standing and walking and six hours sitting per workday and he lifted and carried 35 pounds. AR 52–53. As acknowledged by the ALJ, the Plaintiff testified that he started experiencing pain around the time he lost that job when the company was sold and that he could not find a new job that would allow him to sit down. *Id.* at 30, 53. The ALJ noted the Plaintiff's testimony that he experiences pain below his hip, which radiates to his legs, making it difficult for him to walk and move and that standing makes his pain worse, while walking makes it a little better. *Id.* at 30, 54. As discussed further below, the ALJ found the Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical evidence and other evidence of record. *Id.* at 30.

The Plaintiff argues that the ALJ failed to build a logical bridge between the evidence and the RFC assessment that the Plaintiff can perform light work with occasional postural limitations. Specifically, the Plaintiff reasons that, after the ALJ rejected the opinions of the two state agency medical consultants who found no severe impairments, the ALJ was left with an "evidentiary deficit" that the ALJ could not fill with her own lay assessment of the objective evidence. The Plaintiff contends that the ALJ failed to explain how the evidence supports a finding that he can stand and walk for six hours in an eight-hour workday as opposed to a shorter period of time consistent with sedentary work.[1] Closely related is the Plaintiff's argument that the ALJ improperly found his subjective complaints to be inconsistent with the evidence of record. A review of the evidence cited by the ALJ reveals that the ALJ did not construct an accurate and logical bridge between the evidence and the RFC determination regarding the Plaintiff's ability to stand and/or walk for six hours in an eight-hour workday, and remand is required for a proper consideration and explanation of the evidence.

Central to the Plaintiff's argument is the ALJ's rejection of the opinions of the two state agency medical consultants, Dr. Ruiz and Dr. Small, who provided the only opinion evidence in the record. *Id.* at 31. They opined in January and August 2016, respectively, that the Plaintiff did not have any severe physical impairment. *Id.* at 67, 75. In rejecting these opinions, the ALJ found that "evidence received at the hearing level supports a finding that the [Plaintiff's] impairments more than minimally impact his ability to perform basic work activity" such that the impairments meet the requirements for severity. *Id*. at 31 (citing Exs. 1F/74, 4F/3). The two records cited in support are a May 11, 2015 progress note in which the Plaintiff reports worse

---

[1] The Plaintiff also argues that the ALJ failed to explain how the evidence supports an ability to lift or carry 20 pounds at one time. However, the Plaintiff has not offered evidence to show that he has any lifting limitations greater than the 20 pounds at one time that is required for light work. Notably, the Plaintiff testified that he lifted 35 pounds at his last job. AR 53.

7

lower back pain following a lumbar paravertebral facet joint injection, *id.* at 296 (1F/74), and an April 11, 2016 progress note from the Plaintiff's neurosurgeon, Dr. Dephillips, *id.* at 316 (4F/3).

Having rejected the state agency opinions, the ALJ found the RFC for light work with postural limitations supported by the evidence, reasoning that, although the Plaintiff says he could not find a job that would allow him to sit, "physical examinations do not support standing or walking limitations that would limit the claimant to sedentary work." *Id.* at 32. The ALJ also explained, "The majority of his physical examinations are within normal limits, and do not indicate gait, walking, or standing issues, as described above." *Id*. However, as argued by the Plaintiff, these findings are based on an incomplete examination of the medical evidence of record. In addition, the ALJ mischaracterizes some of the cited evidence.

As a result, the ALJ's analysis of the medical records does not fill the gap left after the state agency opinions were rejected because the ALJ's remaining analysis does not explain how the evidence supports a finding that the Plaintiff can perform the standing and walking requirements of light work despite his pain. *See, e.g.*, *Henry v. Saul*, No. 3:18-CV-372, 2019 WL 3729657, at *3–4 (N.D. Ind. Aug. 8, 2019) (finding that the ALJ impermissibly played doctor when no opinion evidence translated a physical assessment of the plaintiff's impairments into work-related functions and the ALJ had given little weight to the opinions of the state agency assessments because they did not have a complete record (citing *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)); *Terry v. Astrue*, 580 F.3d 471, 476 (7th Cir. 2009) ("If we exclude the unsigned report from the record, we cannot identify any evidence the ALJ could have relied on to conclude that Terry could perform sedentary work.").

First, the ALJ fails to explain why the abnormal physical examination findings in the record do not support the Plaintiff's assertion that his back pain causes difficulty with prolonged

walking and standing. The ALJ found that the Plaintiff's claims of debilitating back pain appeared "disproportionate to the objective medical findings." AR 30. In support, the ALJ acknowledged that the medical evidence "does show some less than optimal findings, including limited and guarded range of motion, lumbar radiculopathy, diminished pinprick sensation to the left thigh and knee, and some tenderness in the lumbar spine," *Id.* at 30–31, but nevertheless concluded that the "the majority of the claimant's physical examinations are within normal limits, or note improvement." *Id.* at 31 (citing 1F/74 (AR 296), 4F/3 (AR 316), 10F/3 (AR 465)). The ALJ also noted that, around the alleged onset date, reports showed "lower extremity functioning, normal reflexes, full muscle strength in the lumbar spine, negative straight leg raises, normal gait, and an ability to stand without difficulty." *Id.* at 31 (citing 1F/65 (AR 287–3/16/2015), 1F/71 (AR 293–4/16/2015), 1F/74 (AR 296–5/11/2015), 1F/77 (AR 299–5/11/2015)).

The ALJ erred by failing to explain why the normal examination findings, a normal gait, and the ability to stand without difficulty in the limited time and space of a physical examination negate or contradict the numerous "less than optimal findings" of limited and guarded range of motion, lumbar radiculopathy, diminished pinprick sensation to the left thigh and knee, and tenderness in the lumbar spine (as well as positive straight leg raises the ALJ fails to mention on that list), each of which appear consistent with the Plaintiff's asserted inability to stand or walk for prolonged periods of time, especially in light of his obesity. *See, e.g.*, *Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) (finding that the ability to walk 50 feet without support does not demonstrate an ability to stand for 6 hours (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). In addition, the three records the ALJ cited, dated May 11, 2015, April 11, 2016, and November 10, 2017, do not demonstrate improvement.

For example, the May 11, 2015 progress note for follow up after a lumbar paravertebral facet joint injection reported that the Plaintiff's pain was worse since the injection, and on physical examination he had tenderness in the lumbosacral spine, guarded and limited range of motion, and left axial loading. AR 296, 299.

In the April 11, 2016 progress note, Dr. Dephillips noted on review of systems that the Plaintiff was "positive for back pain" and "positive for sensory change" and on physical exam found that the Plaintiff's "sensory examination revealed diminished pinprick sensation and light touch in the left anterolateral thigh to the knee." *Id.* at 316. Although Dr. Dephillips stated that an option was spinal fusion surgery, he felt that the risks outweighed the benefits, so the plan was for the Plaintiff to undergo a lumbar epidural steroid injection and physical therapy. *Id.* at 317. But at the follow up visit on June 27, 2016, the Plaintiff continued to complain primarily of lower back pain that radiates into the anterolateral thigh to the knee with associated numbness and tingling. *Id.* at 314. Notably, in the June 27, 2016 progress note, Dr. Dephillips wrote that the "MRI scan of the lumbar spine reveals multiple levels of lumbar spondylosis[;] *although his pain is disabling enough* and he is unable to work I feel that the risks of surgery outweigh the benefits. The patient has been referred to the pain clinic for a lumbar epidural steroid injection after which [he] will return to the office for follow-up evaluation." *Id.* (emphasis added).

At the November 10, 2017 physical therapy session, the Plaintiff had positive flexion in standing, positive extension in standing, and positive flexion in sitting if prolonged. *Id.* at 465. In his briefs, the Plaintiff further identifies other abnormal findings, including "spinous and paraspinal tenderness in the lumbar region with restricted range of motion" and positive straight leg raising bilaterally at the consultative examination in January 2016, *id.* at 304, and Dr.

10

Sanchez's March 8, 2016 examination finding of decreased range of motion and pain in the lumbar back, *id.* at 307.

Similarly, the ALJ described the Plaintiff's treatment as "conservative, consisting of pain management and physical therapy" without acknowledging the nature of the pain management or that it did not resolve the Plaintiff's pain. *See id.* at 31; 20 C.F.R. § 404.1529 (instructing ALJs to consider the course of treatment in evaluating the claimant's allegations as to symptoms and limitations). Although the ALJ cited the correct treatment records for the Plaintiff's back pain, *see* AR 31 (citing Exs. 21F (AR 815–37), 22F (AR 838–69)); *see also* Pl.'s Br. 7, ECF No. 13 (citing AR 815, 817, 819, 841, 844, 819, 850), the ALJ did not mention that the "pain management" consisted of prognostic medial branch nerve blocks to the lumbar facet joint at the L2, L3, L4, and L5 levels in August 2016, September 2016, November 2016, January 2017, and February 2017, *see* AR 815, 817, 819, 841, 844, and radiofrequency ablation of the medial branch nerve to the lumbar facet joint at the left L2, L3, L4, and L5 in November 2016 and April 2017, *see id.* at 819, 850. The nature and number of these procedures supports the Plaintiff's pain allegations. *See Huber v. Berryhill*, 732 F. App'x 451, 456–57 (7th Cir. 2018) (finding that the ALJ's characterization of the plaintiff's "treatment regimen" as "conservative" was misguided when the ALJ omitted the kyphoplasty surgery and radiofrequency ablation, both of which bolstered the plaintiff's pain allegations).[2]

The ALJ did not address why the Plaintiff's doctors would continue to order the nerve blocks and radiofrequency ablation and why the Plaintiff would continue to undergo the procedures if not warranted by the Plaintiff's pain. *See Goble v. Astrue*, 385 F. App'x. 588, 591 (7th Cir. 2010) ("We have deemed it improbable that a claimant would undergo pain-treatment

---

[2] The only mention of the injections in the opinion is when the ALJ states, in summarizing the Plaintiff's testimony, "He reported he received injections in his back for pain." AR 30.

11

procedures such as heavy doses of strong drugs in order to increase chances of obtaining disability benefits or that doctors would prescribe these treatments if they thought she were faking." (citations omitted)). The ALJ also failed to address Dr. Dephillips' April and June 2016 statements that the Plaintiff was a candidate for spinal fusion surgery but that since the risks outweighed the benefits, he recommended the "conservative" treatment of physical therapy and an epidural steroid injection. *See* AR 314, 317; *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (finding that the ALJ's misinterpretation of the significance of the plaintiff's extensive treatment had a material effect on the credibility and RFC assessments).

In addition, the ALJ did not discuss the follow up visit reports indicating that the Plaintiff did not obtain relief from the numerous procedures. For example, on January 13, 2017, the Plaintiff reported 60% relief of the left low back pain from the RFA but that the right back pain was greater at 7/10 and intermittently radiated down the anterolateral aspect of the left thigh. AR 838. On review of systems, the Plaintiff was positive for tingling sensation, numbness, weakness to arms and legs, joint pain, and muscle spasm. *Id.* The physical examination was mostly normal except that he had tenderness to palpation on the right at L5/S1. *Id.* at 839. The plan was to proceed with another medial branch block, which occurred on January 31, 2017, and on February 21, 2017. *Id*. at 840–41, 844. On March 1, 2017, the Plaintiff reported 65% relief for four hours after the first block and 70% relief for five hours after the second block but that his pain then returned to baseline. *Id.* at 847. On exam, the findings were largely normal except for positive right lumbar facet loading. *Id.* at 848. After the April 4, 2017 lumbar radiofrequency ablation, *id.* at 850, the Plaintiff returned earlier than expected on April 10, 2017, reporting pain of 8 on a scale of 1 to 10, *id.* at 853. On April 26, 2017, the Plaintiff reported 65% relief but had tenderness over the SI joint and was positive for spasms; the plan was an SI injection and referral

for physical therapy. *Id.* at 856–58. On May 15, 2017, the Plaintiff reported moderate relief from physical therapy but also continued pain; on exam he was positive for right L5/S1 tenderness to palpation and positive for spasm with a plan for a right trigger point injection. *Id.* at 860–62. On October 2, 2017, the Plaintiff continued to have the same functional status complaint that the lower back pain affected his ability to stand and walk; the examination was positive on the left and right for lumbar facet loading, was positive for spasm, and noted right L5/S1 paraspinal tenderness. *Id.* at 863–64. On October 30, 2017, positive straight leg raising was noted as well as the report that the pain persisted despite physical therapy; another SI joint injection was ordered. *Id.* at 866–68.

Overall, these records contradict the ALJ's broad statement that the physical examinations "note improvement," *see id.* at 31, and instead "bolster[ ] [the Plaintiff's] pain allegations," *Huber*, 732 F. App'x at 457; *see also Scrogham*, 765 F.3d at 701. As argued by the Plaintiff, improvement is relevant only to the extent the improvement restores his capacity to engage in substantial gainful activity. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled."); *Allensworth v. Colvin*, 814 F.3d 831, 834 (7th Cir. 2016). These treatment records as a whole appear to support the Plaintiff's allegations of ongoing pain that impairs his ability to stand and walk for long periods of time.

Second, the ALJ found the radiology reports to be "consistent with [the Plaintiff's] physical examinations," AR 31, which appears to mean the ALJ interpreted the radiology reports as inconsistent with the Plaintiff's allegations of disabling pain. However, the ALJ erred by not relying on any expert opinion to support her interpretation of the radiology reports. *See Lambert*

*v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("But no medical source opined that the imaging results were inconsistent with Lambert's complaints of disabling pain."); *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018) (finding that, without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were "consistent" with his RFC assessment (citing *Goins*, 764 F.3d at 680; *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014))); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments." (citing *Akin*, 887 F.3d at 317–18)).

For example, the ALJ correctly describes the April 2016 lumbar spine MRI impression as "stable spondylosis, including severe bilateral L5-S1 foraminal stenosis, and no significant central stenosis." AR 31 (citing 7F/29 (AR 374)). But, it is unclear how the ALJ determined that "severe bilateral L5-S1 foraminal stenosis," and even "stable spondylosis," are inconsistent with the Plaintiff's complaints of low back pain radiating into his legs that make it difficult for him to stand or walk for long periods of time. *See Lambert*, 896 F.3d at 774 ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins*, 764 F.3d at 680)). In contrast, Dr. Dephillips described the more specific MRI findings as revealing multiple levels of facet arthropathy, foraminal stenosis worse at the L5-S1 level (moderate to severe bilaterally), and disc degeneration with protrusions at both the L4-L5 and L5-S1 levels. *See* AR 317. As noted above, Dr. Dephillips indicated that, even though the Plaintiff's "pain is disabling enough" such that one treatment option was a spinal

fusion at the L4-S1 levels, the risks of surgery outweighed the benefits, leading to his recommendation of physical therapy and an epidural injection. *Id.* at 314, 317.

The ALJ also wrote that a CR of the lumbar spine with bending views (which Dr. Dephillips also reviewed on April 11, 2016) revealed "only mild to moderate diffuse arthritic changes in the lumbar spine, and only mild disc space narrowing." *Id.* at 31 (citing Ex. 21F/7 (AR 821)). The ALJ did not note the additional finding of "some anterior spurring off all lumbar vertebrae." *Id.* at 821. Then, the ALJ commented, with no citation to the record, "However, there was no evidence of nerve root involvement." *Id.* at 31. While it is true that there is no reference to nerve root involvement in either the MRI or the CR report, it is unclear how the lack of such evidence means that the objective tests are inconsistent with the Plaintiff's chronic low back pain, exacerbated by walking and standing. In reviewing both the MRI and the CR report, the ALJ determined the significance of the objective tests herself without medical input, which is reversible error. *See Lambert*, 896 F.3d at 774; *Akin*, 887 F.3d at 318; *Moon*, 763 F.3d at 722; *Goins*, 764 F.3d at 680 (remanding where the ALJ "play[ed] doctor" by summarizing the MRI results without subjecting them to professional medical scrutiny). As noted in *Akin*, the ALJ had many options to avoid this error, such as seeking an updated medical opinion. 887 F.3d at 318 (citing *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000)).

Next, in reviewing the medical evidence, the ALJ references "eight physical therapy sessions in December 2017" and the fact that the Plaintiff declined additional sessions despite being covered by insurance, which the ALJ found suggestive of improvement. AR 31 (citing AR 13F/5, 6 (AR 529, 530)). However, the physical therapy sessions in December 2017 were for a recent onset of pain in his upper body and arms, based on a diagnosis of "cervical radiculopathy

v. triceps strain." *Id.* at 630.[3] In contrast, the Plaintiff had twelve sessions of physical therapy in April 2016 for his low back pain with only temporary improvement, *see id.* at 346–70, 829, after which he began treatment at the spine center and received the series of medial branch nerve blocks and radiofrequency ablation. *See id.* at 829, 815–69. The physical therapy records do not support the ALJ's conclusion that the Plaintiff's lower back pain had improved.

Finally, as the last basis for finding that the medical evidence does not support the Plaintiff's asserted limitations, the ALJ wrote that "[a]n additional physical examination in January 2018 noted normal musculoskeletal functioning." *Id.* at 31 (citing 19F/2 (AR 770)). But the Plaintiff was seen on that date for a complaint of vertigo, which is the focus of the office visit report and the physical examination; there is no indication that the Plaintiff's lower back pain was assessed during the visit. *Id.* at 769–70; *see Allensworth*, 814 F.3d at 834 ("There is no indication that Dr. Imlach examined the plaintiff's back on this visit, so the note sheds no light on his assessment of the plaintiff's lower-back pain.").

After a careful review of the evidence cited by the ALJ in support of the RFC, the Court finds that the ALJ did not build an accurate and logical bridge between the evidence and the RFC. As the RFC determination is an administrative determination, an ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citation omitted). However, after the ALJ rejected the only medical opinions in the record, which had found no limitations, the ALJ did not identify evidence of record to show that the Plaintiff can stand or walk for six hours in an eight-hour workday given his chronic low back pain that radiates into his

---

[3] The physical therapy discharge report states that he attended 10 sessions, missed no sessions, and that his right and left radiating *arm* pain had gone from 7–8/10 to 2/10 based on improvement from physical therapy. AR 630–31.

16

legs for which he consistently received treatment over several years. *See Suide v. Astrue*, 371 F.

App'x 684, 690 (7th Cir. 2010) (finding an evidentiary deficit left by the ALJ's rejection of the

treating physician's reports because the remainder of the record did not support the ability to

"stand or walk for six hours"); *see also Allensworth*, 814 F.3d at 835 (finding that "[a] gaping

hole in the record is the absence of any evidence that the plaintiff can . . . stand or sit for six

hours in an 8-hour workday"). The treatment records consistently show temporary or incomplete

relief from the numerous procedures the Plaintiff underwent. The Plaintiff testified that at his last

job, he stood or walked for two hours and sat for six hours in an eight-hour workday. While the

ALJ identifies certain normal examination findings in the record, she does not connect those

findings to an ability to stand and/or walk for prolonged periods of time in light of his pain. As

for the postural limitations, it is unclear how the ALJ determined that the Plaintiff can perform

the postural limitations occasionally as opposed to not at all. Without these explanations, the

Court cannot trace the ALJ's reasoning.

   Contrary to the Commissioner's argument, the fact that the ALJ found the Plaintiff to be

*more* limited than the non-examining state agency reviewing physicians found in their opinions

does not automatically mean that the RFC for light work is supported by substantial evidence.

This is not a case in which the ALJ credited the plaintiff's allegations of pain to find greater

limitations than those imposed by any doctor. *See Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir.

2010) ("[T]he ALJ gave full credit to [the plaintiff's] reports of pain and functional limitations in

assessing her residual functioning capacity. It was because of and not in spite of [the plaintiff's]

testimony that the ALJ limited her to a more restrictive residual functional capacity finding than

any physician on the record."). Rather, the ALJ here rejected the medical opinion evidence and

found the Plaintiff not entirely credible. The ALJ then failed to explain how the remaining

evidence supported the functional limitation of the ability to stand or walk for six hours in an eight-hour workday as opposed to a shorter period of time. As set forth above, the objective evidence of record produced by the Plaintiff appears consistent with the Plaintiff's allegations regarding the effect of his pain on prolonged standing and walking, and the ALJ did not provide a logical explanation of the evidence in support of the RFC.

Although the ALJ could have based the RFC on the Plaintiff's subjective complaints after rejecting the state agency physicians' opinions, the ALJ found the Plaintiff's allegations of disabling pain "not entirely consistent" with the medical evidence for many of the same reasons described above. As argued by the Plaintiff, the "not entirely consistent" language is problematic here because the ALJ did not explain *which* of the Plaintiff's allegations are not supported by the medical evidence. *See Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011) ("There is no explanation of which of Martinez's statements are not entirely credible or how credible or noncredible any of them are."). If the ALJ found the medical evidence sufficient to disagree with the state agency doctors' opinion that the Plaintiff has *no* impairment, then the ALJ must have credited some aspect of the Plaintiff's allegations in light of that medical evidence. Moreover, the ALJ found the Plaintiff's complaints to be "inconsistent because the medical evidence does not support the degree of limitation alleged." AR 30. However, that statement is based on the same incomplete analysis of the medical evidence described above. *See Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (finding errors in the ALJ's consideration of the plaintiff's subjective symptoms as "not reasonably consistent with the overall evidence of record" because of the ALJ's failure to engage with the evidence); *cf. Hostetter v. Saul*, 841 F. App'x 983, 986–87 (7th Cir. 2021) (finding that the ALJ properly weighed the plaintiff's subjective complaints in

light of his testimony about his daily activities). On remand, the ALJ will have an opportunity to review the credibility determination in light of a proper review of the medical evidence.

As noted by the Plaintiff, the failure is not harmless because if the Plaintiff were limited to work at the sedentary, rather than the light, exertional level, it appears that a finding of disability would result as of the Plaintiff's 50th birthday based on the Plaintiff's vocational profile and Medical Vocational Rule 201.10. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.10; *see also* AR 62–63 (vocational expert testimony). For these reasons, remand is required. Because remand is required on this basis, the Court need not address the Plaintiff's remaining arguments.

Finally, the Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for further proceedings. "An award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)). Based on the discussion above, an immediate award of benefits is not appropriate.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 13], REVERSES the final decision of the Commissioner of the Social Security Administration, and REMANDS this matter for further proceedings consistent with this Opinion. The Court DENIES the Plaintiff's request for an award of benefits.

SO ORDERED on July 6, 2021.

                                            s/ Theresa L. Springmann
                                            JUDGE THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT